John D. Scott v. Commissioner.
Scott v. Commissioner
Docket No. 32252.
United States Tax Court
1952 Tax Ct. Memo LEXIS 152; 11 T.C.M. (CCH) 711; T.C.M. (RIA) 52210; June 30, 1952
*152 1. Petitioner in 1947 and in prior years owned and operated as a sole proprietorship a used car business. It was a prosperous business. For three years prior to 1947 petitioner's wife had been employed in the business in an important capacity and had been paid a salary. In 1947 it was agreed between petitioner and his wife that if she would devote practically all her time to the business she would receive as her compensation for her services 50 per cent of the net profits for that year. The net profits in 1947 were $23,403.24, and 50 per cent of these profits was $11,701.62. Petitioner claimed a deduction on his return as compensation paid his wife for her services, this $11,701.62. The Commissioner in his determination of the deficiency disallowed all of this deduction except $773.80 on the ground that the latter amount was all that petitioner paid his wife in 1947. Petitioner paid his wife for her services in 1947, $9,746.56. Held, that petitioner being on the cash basis is only entitled to deduct this $9,746.56 instead of the $11,701.62 which he deducted on his return. Held, further, this $9,746.56 was reasonable compensation to petitioner's wife for valuable and important services *153 which she rendered to petitioner in his business in 1947, within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code. 2. Held, the Commissioner is sustained in his disallowance of a claimed loss by petitioner of $241.06 which petitioner claimed he incurred in farming operations in 1947. The petitioner has not established that he was engaged in farming operations as a business in 1947 and the expenditures in question represented personal expenses and are not allowable deductions under section 23 (a) (1) (A) of the Internal Revenue Code. T. J. Griffin, Esq., 1014 Sterick Bldg., Memphis, Tenn., for the petitioner. Homer F. Benson, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1947 of $7,424.93. The deficiency is due to three adjustments made by the Commissioner, namely: (a) Salary
$10,927.82
(b) Additional income
4,185.35
(c) Farm loss
241.06 The petitioner contests adjustments (a) and (c) but does not contest adjustment (b). Adjustment (a) is explained in the deficiency *154 notice as follows: "(a) On your return you deducted the amount of $11,701.62 as salary explained to have been paid to your wife, Mrs. Rebecca J. Scott. It has been determined that only the amount of $773.80 was constructively received by Mrs. Scott during 1947 by having been brought within her control and disposition. Accordingly income has increased by the amount of $10,927.82." Adjustment (c) is explained in the deficiency notice as follows: "(c) It is held that you have not furnished evidence to establish the fact that the amount of $241.06 deducted as a farm loss, is deductible for income tax purposes and your income has been increased by that amount." Thus it will be seen that by reason of petitioner's concession that the Commissioner's adjustment (b) is correct, only a part of the deficiency is contested. Findings of Fact The petitioner John D. Scott resides in Germantown, Tennessee. During the taxable year 1947 he resided in Shelby County, Tennessee, at Memphis. The petitioner and his wife, Rebecca J. Scott, sometimes hereafter referred to as Rebecca, filed separate Federal income tax returns for the calendar year 1947 and computed net income reported therein according *155 to the cash receipts and disbursements method of accounting. The returns were filed with the collector of internal revenue for the district of Tennessee, Nashville, Tennessee. During the year 1947 petitioner operated a used car business in the City of Memphis, Tennessee, and had been operating such a business for several years prior thereto as a sole proprietorship. On January 10, 1947, petitioner drafted and executed an instrument set out as follows: "I, J. D. Scott, give my wife, Rebecca J. Scott, one half of the profit, known as the J. D. Scott Motor Company, 642 Union Avenue, Memphis, Tennessee for her services as bookkeeper and office manager, for said J. D. Scott Motor Company at 642 Union Avenue, as long as said Rebecca Scott devotes 90/100 of her time at 642 Union Avenue as said bookkeeper and office manager. "J. D. Scott Motor Company "J. D. Scott "Witness: T. O. Brooks "Subscribed and sworn to before me, this 10th day of January, 1947. "Robert Scruggs, Jr. "Notary Public" During the years 1944, 1945 and 1946 petitioner had conducted the business with his wife as his principal employee and in March 1947 one salesman was employed. Petitioner's wife was the *156 only office employee. In this capacity, she sold cars in the absence of the petitioner, received money of the business from customers and deposited funds in the bank account of petitioner. She executed all papers necessary for petitioner to borrow money on automobiles in so-called "floor plan" transactions. Petitioner's wife prepared and issued practically all bills of sale to purchasers of cars, prepared social security tax and sales tax returns, police department reports of cars bought and sold, prepared notes and contracts incident to the sale of cars on the installment plan, which type of sale was in the majority, delivered notes and contracts to finance companies and received checks therefor, transacted the business of the petitioner with banks, wrote checks, and handled most of the money received by petitioner's business. Petitioner's wife spent most of her time on the job. Petitioner had no talent for details and Rebecca looked after practically all the details of the business. During the year 1947 petitioner's wife was authorized and did freely sign petitioner's name on checks of the business. When issuing such checks, she signed "J. D. Scott." This was done freely with petitioner's *157 permission. During the year 1947 petitioner's wife received the sum of $3,902.81, in cash, the proceeds of checks made payable to petitioner, said checks being endorsed and cashed by petitioner's wife and the proceeds retained by her, without restriction as to its use by her, and with the full knowledge and permission of the petitioner. These checks were from Associated Discount Corporation and represented the so-called Reserve Checks 1947. During the year 1947 petitioner and his wife acquired a tract of land by warranty deed located in Shelby County, Tennessee, at a cost of $6,406.45. There were 16 acres of land in this tract, more or less, and it was purchased by petitioner and his wife as a future home. No improvements were on the tract when they purchased it. This warranty deed was introduced in evidence and reads in part, as follows: "This Indenture made and entered into this 7th day of July 1947, by and between THOMAS D. IRVIN and wife, BERTHA M. IRVIN, parties of the first part, and JOHN D. SCOTT and wife, REBECCA J. SCOTT, parties of the second part. "WITNESSETH: That for the consideration hereinafter expressed, the first parties have bargained and sold and do hereby *158 bargain, sell, convey and confirm unto the second parties, the following described real estate in Shelby County, Tennessee, to-wit: * * * "[Here follows a detailed description of the land which is not needed here.] "To Have and to Hold the aforedescribed real estate, together with all the appurtenances and hereditaments thereunto belonging or in anywise appertaining unto the said parties of the second part, their heirs and assigns in fee simple forever. "And the said parties of the first part do hereby covenant with the said second part that they are lawfully seized in fee of the aforedescribed real estate; that they have a good right to sell and convey the same; that the same is unencumbered; and that the title and quiet possession thereto they will warrant and forever defend against the lawful claims of all persons." * * *
Subsequent to the acquisition of the tract of land covered by such deed and during 1947 improvements in the nature of a well, pump, pump house, lake, levee, 165 pecan trees and 45 fruit trees were added to said tract of land at cost of $5,281.05. Checks and vouchers for these improvements are in evidence. The purchase price of the land and cost *159 of improvements were paid by petitioner from the bank account of his business. It was agreed by and between petitioner and his wife that compensation due her was to be paid on the purchase price of the property, and that his wife would accept her one-half interest in said property in lieu of a cash payment from petitioner. It was also agreed that one-half of the payments made should be attributed to the wife and charged to her compensation for the year 1947. On January 8, 1948, the wife of the petitioner was paid $2,300 for services rendered in 1947. This, she used to pay her income tax for 1947. In computing net income for the year 1947 petitioner claimed a deduction for the amount of $11,701.62, the amount being one-half of petitioner's net income from the business, as the salary of his wife, Rebecca J. Scott, for services rendered in petitioner's used car business during that year. The respondent in his determination of the deficiency disallowed this deduction except to the extent of $773.80. The effect of this disallowance was to increase petitioner's net income for the year 1947 by the amount of $10,927.82. In 1947 the petitioner claimed a deductible loss in the amount *160 of $241.06 for fertilizer and seed used on the property, which he and his wife purchased July 7, 1947, and on which they subsequently built their home. This loss the Commissioner disallowed. The petitioner was not engaged in the business of farming at any time during the year 1947. Hence petitioner had no deductible farm loss in 1947. Opinion BLACK, Judge: Petitioner states the issues in his brief as follows: "Did the Commissioner err in determining that petitioner did not pay the sum of Twelve Thousand one hundred twenty-nine and 11/100 ($12,129.11) dollars to his wife Rebecca Scott, in 1947? "Did the Commissioner err in determining that the amount aforesaid, paid by petitioner in 1947 to his wife, for services rendered in his business, was not reasonable? "Did the Commissioner err in determining that petitioner was not entitled to a deduction claimed for expenses paid in connection with the operation of an orchard containing 165 pecan trees and 45 fruit trees?" Respondent states the issues in his brief as follows: "1. Is the deduction claimed by the petitioner in the amount of $11,701.62, as the salary of his wife, allowable in excess of the amount of $773.80, as determined *161 by the respondent? "2. Does the amount of $241.06, claimed by the petitioner as a deductible farming loss incurred in connection with improving land purchased for a home site, constitute an allowable deduction for income tax purposes?" Thus it will be seen that we have two issues for our decision in the instant case. Before discussing these two issues in detail, it may be well to call attention to the fact that petitioner's business was conducted as a sole proprietorship. His wife was not a partner in the business nor a joint adventurer. She was an employee in the business and her compensation was to be one-half of the net profits of the business. If there were no net profits she would have reecived no salary. Of course, if Rebecca had been a partner of petitioner, petitioner would not have had to report on his income tax return her share of the partnership profits and she would have had to return as taxable income in 1947 her share of the profits for that year whether they were actually distributed to her or not. But she was not a partner and no one contends that she was, and that rule does not apply here. Petitioner was on the cash basis and, therefore, he could only deduct as *162 ordinary and necessary business expenses under section 23 (a) (1) (A) of the Code the compensation which he actually paid her in 1947. Petitioner claims the right to deduct the following payments: Proceeds of checks cashed
$ 3,902.81
Salary invested in real estate
5,926.30
Cash paid January 8, 1948
2,300.00
Total
$12,129.11 We will take up these three claimed items in their order. As to item 1 above, we think petitioner has clearly proved his right to the deduction. The checks which aggregate this amount are in evidence and the uncontradicted evidence is that they were cashed by Rebecca and used for her own individual account with petitioner's consent and permission. They were the so-called Reserve Checks which were of the same kind as those paid to petitioner by the Associated Discount Corporation each year. In 1944, 1945 and 1946 petitioner had turned similar checks as these over to Rebecca as compensation and in 1947 he did the same thing. The only difference was that it had been agreed that petitioner's wife would receive as her compensation in 1947, onehalf of the net profits of the business and these checks which were turned over to her and which she *163 cashed for her own use and benefit were not to be all of her compensation as had been the case in prior years, but only a part of it. We hold that petitioner is entitled to deduct this $3,902.81 in 1947 as a part of the compensation which he paid Rebecca for her services in that year to his business. The next item shown above is: "Salary invested in real estate." The evidence is that petitioner and his wife purchased a tract of 16 acres of land in 1947 on which to build a future home. It is true that petitioner used his own individual checks in making this purchase but it was agreed between him and his wife that each of them would pay one-half of the cost of the land and that Rebecca's one-half would come out of her compensation for 1947. The cost of the improvements made on the premises in 1947 were to be divided in the same manner. Had the petitioner issued his checks to his wife as payments on compensation for 1947 and had the wife issued her checks to the seller of the realty and to those who did the improvements, respondent could not plausibly argue that Rebecca had not paid her one-half of the costs. What was done, in our opinion, amounts to the same thing. The land was *164 deeded to petitioner and his wife by warranty deed and each one's one-half of the land and the improvements thereon. The fact that Rebecca agreed to accept part of her compensation for 1947 in this manner rather than cash does not make it any less a payment to her. She has returned it as taxable income to her, which it was and petitioner has deducted it as compensation paid to her, which it was. 70 Corpus Juris Secundum 228 says: "While payment is ordinarilly required to be made in money, it may, when so agreed, either expressly or by implication, or when the creditor so consents, be made by furnishing, transferring or delivering anything of value." Citing W. K. Mitchell & Co. v. American Credit Indemnity Co. of New York, D.C. Pa., 11 Fed. Supp. 394, affirmed, (CCA) American Credit Indemnity Co. of New York v. W. K. Mitchell & Co., 78 Fed. (2d) 276. We sustain petitioner as to this item except as to the precise amount. Petitioner designates this amount as $5,926.30. In this designation petitioner is in error. The checks and vouchers to cover these costs are in evidence. The cost to petitioner and his wife of the land purchased was $6,406.45 and the *165 cost to them of the improvements paid for in 1947 was $5,281.05. These two items make a total of $11,687.50 and Rebecca's one-half of this amount which she paid in the manner above indicated was $5,843.75. This amount petitioner is entitled to deduct as part of the compensation paid to Rebecca in 1947 for her services as petitioner's employee. The next item which petitioner claims he is entitled to deduct as compensation paid to Rebecca in 1947, is "Cash paid January 8, 1948, $2,300.00." There is no doubt but that petitioner paid Rebecca this amount. The check for $2,300 is in evidence. However, the payment was not made until January 8, 1948, and the year we have before us is 1947 and petitioner is on the cash basis. There is no dispute as to that. Manifestly this $2,300 is not a deduction for 1947. Petitioner contends that the deduction should be allowed because he says that Rebecca constructively received it in 1947. In the first place we can not make a finding from the facts in evidence here that Rebecca constructively received this payment in 1947. The facts in evidence would not support such a finding. But even if we could find such a fact, that in itself would not entitle *166 petitioner to a deduction of the $2,300. Constructive receipt is one thing and constructive payment is quite another thing. See our discussion in L. R. and Lulu McKee, 18 T.C. 512 (June 12, 1952). We hold that petitioner is not entitled to this $2,300 deduction for the year 1947 and respondent properly disallowed it. Respondent argues that 50 per cent of the net profits of petitioner's business as a salary for the services of Rebecca was excessive and that respondent should be sustained in his disallowance on the ground that the $773.80 which he has allowed in his determination of the deficiency is all that should be allowed because to allow more would be an unreasonable allowance as payment for Rebecca's services. In the first place, respondent in his determination of the deficiency, in disallowing the $10,927.82 of the $11,701.62 salary deduction which petitioner had claimed on his return, said nothing about having made his disallowance on the ground that compensation paid was not reasonable. Also respondent says nothing about the grounds of unreasonableness in his answer. But even if we consider this ground as having been properly raised by the pleadings, we hold *167 that petitioner has met his burden of proof and has shown that the amounts which he paid Rebecca for her services in 1947 were reasonable in amount is compensation for her services in that year under the provisions of section 23 (a) (1) (A) of the Code. The facts show that Rebecca played a well-nigh indispensable part in petitioner's business in 1947. The following question and answer in the record on cross-examination of petitioner show how indispensable a part Rebecca played in the business in 1947: "Q. [By Mr. Benson, respondent's counsel] Mr. Scott, what did you do in the operation of that business? "A. Well, I want to be frank with you. I was drinking a lot of whiskey in those days and my wife was running the business. I was at Gartley-Ramsey Hospital, which is a place for getting over a drunk, for five or six times, and I was at Wallace Sanatorium, another place like that, five or six times, but I was lucky enough to get off of it, in June of 1947 and I haven't had even a bottle of beer since then. In the latter part of 1946 and the latter part of 1947 I was drinking a lot of whiskey and my wife run the business by herself. She could do more with it than I could and one *168 time I was in Gartley-Ramsey for over two weeks and then I made up my mind that if I ever got out of there, I would try to get ahead." Thus it seems plain that at least in 1947, which is the year before us, Rebecca played a very important part in the running of petitioner's business. Petitioner would have found great difficulty in running it without her. So on this issue of reasonableness of the compensation paid Rebecca in 1947, if it be considered as having been properly raised by the pleadings, we hold in petitioner's favor. There is only one other issue to still be considered and that is whether petitioner is entitled to deduct in 1947 a farm loss of $241.06. We agree with respondent that petitioner has not proved facts which would entitle him to take any such loss. As has already been pointed out elsewhere petitioner and his wife purchased a tract of land containing about 16 acres on which they expected to erect a future home. This they have done in a later year. In 1947 petitioner and his wife expended $204 for seed and $200 for fertilizer used on the tract of land. These expenditures, under the facts we have here, would not support a farm loss deduction. The Commissioner *169 is sustained in his disallowance of this claimed farm loss deduction. To summarize: In a recomputation under Rule 50, petitioner should be allowed a deduction for compensation paid Rebecca in 1947 of $9,746.56 instead of the $11,701.62 which petitioner claimed on his return and instead of the $773.80 which the Commissioner allowed in his determination of the deficiency. The $241.06 farm loss which petitioner claimed as a deduction on his return should be disallowed. The $4,185.35 which respondent added to petitioner's income under adjustment (b) should remain that way. It is not contested. Decision will be entered under Rule 50.